This case arises from an intersectional collision between an ambulance owned by the plaintiff and a truck owned by the defendant Frank De Frances, and insured against public liability by the other defendant Standard Accident Insurance Company. The plaintiff alleges that at about 11 o'clock, p.m., on August 31, 1944, their ambulance, being a 1940 Buick ambulance, was being driven by their employee Lonnie R. Scott, on Government Street, in the City of Baton Rouge, heading east, at a reasonable rate of speed not exceeding 35 miles per hour, on his right-hand side; that Oakwood Drive is a street which intersects Government Street Extension, which is a double street with a neutral ground in the center; that the truck of the defendant Frank De Frances was a 1940 Dodge truck, and at the time was being driven by Mrs. De Frances on Government Street going in the same direction as the Buick ambulance, and that as the two vehicles arrived at the intersection of Oakwood Drive, the driver of the Buick ambulance blew his horn and pulled to his left to pass the Dodge truck, but that as the Buick ambulance had just about overtaken the truck and was about to go around it, the driver of the Dodge truck turned to her left without giving any signal or warning, and the driver of the Buick ambulance thereupon pulled the ambulance further to the left and entirely off the pavement on Government Street going around the Dodge truck; that at the same time the driver of the Dodge truck turned the truck further to her left to enter Oakwood Drive, causing the collision of the right front fender of the Buick ambulance against the left side of the truck, toward the front of the truck, which caused the back end of the truck to whip around against the side of the ambulance toward the back part of the ambulance; that as a result of the collision the ambulance ran into a fire plug of the Baton Rouge Waterworks Company, located at the northeast intersection corner of the east side of Oakwood Drive and the north side of Government Street; that the resulting damage to the ambulance was in the sum of $474.09, for which judgment is prayed for against the two defendants. *Page 618 
In its answer the defendant admits that Mrs. De Frances was driving the Dodge truck for the benefit of her husband and that the collision did occur, but they deny that Mrs. De Frances was guilty of any negligence resulting in the accident. The answer states that Mrs. De Frances was approaching Oakwood Drive from the west; that she was driving at a slow rate of speed; that she was using all proper and due precaution and care and that as she approached Oakwood Drive and was preparing to make a left turn into Oakwood Drive, she extended her left arm out of the left side of said truck to its full length and signaled a left turn; that she also glanced into her rear view mirrors, one inside of her truck, and the other on the left side thereof, and that she perceived lights of an approaching vehicle at a distance sufficient for the driver of the vehicle to perceive her signals, but that, notwithstanding, the vehicle, which was the ambulance, continued going at a terrific speed, swerved to its left, and struck her on the left side, knocking the Dodge truck back into Government Street, the point of impact on the truck being on the left door, after which the ambulance continued on and struck a fire plug on the northeast corner of Oakwood Drive and Government Street.
The defendants contend that the collision and resulting damage was caused solely by the negligence of the ambulance driver, partly because (1) he violated the highway regulatory laws, in attempting to pass a vehicle at an Intersection; (2) he failed to sound his horn or siren; (3) he failed to see or to honor the signal of Mrs. De Frances; (4) he failed to keep a proper lookout; (5) he failed to have his ambulance tinder proper control, and (6) he was driving at an unlawful and dangerous rate of speed.
After trial of the case, the District Court rendered judgment in favor of the defendants and dismissed the suit at the costs of plaintiff. Plaintiff has appealed.
Government Street is a paved street and runs east and west. Both vehicles were travelling cast on Government Street on their right or south side of Government Street approaching Oakwood Drive, which is a dead-end street intersecting Government Street from the north. Oakwood Drive is a double boulevard consisting of a neutral ground of six feet separating the two-lane driveway on each side and running north and south. Traffic going north from Government Street was required to travel on the cast lane of the boulevard only. There are no dimensions given or shown for Government Street or the lanes forming Oakwood Drive Boulevard.
The evidence, on behalf of plaintiff, consisted of the testimony of Lonnie R. Scott, the driver of the ambulance, and of Mrs. Myra Scott, and, on behalf of the defendants, the testimony of Mrs. De Frances.
Lonnie Scott testified that he was driving plaintiff's ambulance at approximately 35 or 40 miles per hour, accompanied by Miss Myra Davis (whom he later married) and by a Mr. Martinez; he was the driver, Miss Davis was sitting next to him, and Martinez was sitting next to her. They had been to Pride to take a patient from the hospital to her home, and were on their way to take Miss Davis to her home on Clearcut Road at the time of the accident. The weather condition was fair, the visibility was good and he could see the truck for quite a distance ahead of him, travelling on its right-hand side at the moderate rate of speed. When about 50 yards back of the truck he perceived the truck; when he was about 25 yards away from the truck, he blew his horn and turned to his left to pass the truck; as he approached the truck to pass it on the left-hand side, he again blew his horn; both vehicles were approaching Oakwood Drive but had not yet reached Oakwood Drive, just as the two vehicles were about to reach the western side of Oakwood Drive and the ambulance had gotten up to the back end of the truck and while he was still blowing his horn, Mrs. De Frances stuck her hand out, angling her truck to the left. He pulled the ambulance almost in the ditch when he saw the accident was inevitable. He places the point of impact opposite the entrance or mouth of the western lane and close to the neutral ground of Oakwaad Drive. In rebuttal, he emphatically denies that Mrs. De Frances had her arm "stuck out" for a half block from Oakwood Drive.
Miss Myra Davis corroborated the testimony of Lonnie Scott in so far as the sudden *Page 619 
happening of the accident is concerned and in so far as the horn signal being given. She states that she saw no signal whatever from the truck driver, admitting, however, that she was not paying any particular attention.
The other occupant of the ambulance, Martinez, did not testify. There is a showing in the record to the effect that substantial efforts were made to obtain his testimony, and that at the time of the trial he was in the armed forces and could not be contacted.
Mrs. De Frances testified that she was travelling east on Government Street with the intention to turn off of Government Street on to Oakwood Drive; that at least half a block before reaching Oakwood Drive, she fully extended her arm out of the left window and kept it out so extended until she made the turn; that the truck was equipped with a back view mirror and also one on the side of the truck; that before she gave the signal she glanced into both mirrors, and she saw the lights of a car quite a distance away, coming in the same direction in which she was travelling; that she was then travelling approximately 15 or 20 miles an hour and that as she approached Oakwood Drive she was travelling about 15 miles per hour. She did not hear any siren, horn or other signal regardless of the fact that her hearing is very good and the truck was not making any noise to drown her hearing, and her windows were down. She states that as she was angling to enter the east lane of Oakwood Drive, the ambulance's right front fender struck the left front door of the truck and that as a result of the impact her truck was pushed to the south side of Government Street and that thereafter the ambulance continued to the northeast corner of Government Street and Oakwood Drive and collided with a fire plug. She places the point of impact as opposite the neutral ground of Oakwood Drive on Government Street.
The trial judge failed to submit any written reasons for his dismissal of plaintiff's suit. It necessarily follows that he either found that the accident was caused solely by the negligence of the ambulance driver, thereby absolving Mrs. De Frances of negligence, or at least that he was guilty of negligence which contributed to the accident.
This record presents two questions. First, was the defendant guilty of negligence, and, second, if so, was the plaintiff's driver guilty of negligence which contributed to the accident? We shall discuss these questions in the order named.
[1] According to Mrs. De Frances' own testimony we find her guilty of negligence which contributed to the accident, if her negligence was not the sole cause of the accident. She testified that for more than a half block, she glanced in the two mirrors of the truck and perceived a motor vehicle approaching her or travelling in the same direction; she would not state as to how far this motor vehicle was in the rear. She states that it was travelling pretty fast. She stuck out her hand and kept her hand out until about to make the left-hand turn. She was therefore alerted that she was being approached from the rear. She did not again look in her mirrors at the time of making her left turn. Had she looked in the mirrors, especially the mirror on the left-hand side of the truck, she would have perceived that the ambulance was in the act of passing her. She is charged with having seen that which she should have seen.
Rule 9 of the State Highway Regulatory Act, No. 286 of 1938, § 3, Dart's § 5214, provides that before turning on the highway the driver of a vehicle must see that there is no traffic approaching from either direction so that such traffic will not be unduly or unnecessarily delayed, and that such driver attempting to turn on the highway shall yield the right of way to such approaching traffic and shall not attempt to make a turn unless and until the said way is clear. We have repeatedly held in so many cases that citations become unnecessary, that the left-hand turn maneuver is a very dangerous operation, requiring care and caution and the responsibility for seeing that it can be made in safety is always placed upon the driver desiring to make such turn. Mrs. De Frances was too strongly relying on her extended arm signal for more than a half block, if she did so extend her arm. *Page 620 
Another fact showing that she was negligent is that she started angling her truck to make her left-hand turn at about the western end of Oakwood Drive, opposite the west lane of travel of said drive, or, as she testified, upon reaching the neutral ground. Under the Regulatory Act, she was required to keep on her right-hand side until she reached the center of the east lane of the Drive.
The most serious question is the alleged negligence of the ambulance driver and its resultant effect. The alleged negligence or contributory negligence of the ambulance driver is based on the driver's alleged violation of two provisions of the State Highway Regulatory Act. The provisions in question relate to the passing a vehicle by another at a highway intersection: Section 3, Subsection (e) of Rule 7, under title 2 of the Act, and to the overtaking of a vehicle by another without the overtaking car giving sufficient signal or warning of its intention to do so; Subsection (b) of the same rule. The defendants further charge the ambulance driver in not honoring the signal of Mrs. De Frances' signaling a left turn; in failing to see Mrs. De Frances' signal for a left turn in not keeping a proper lookout; in not having ambulance under proper control, and in travelling at an unlawful and dangerous rate of speed.
[2] Under the view we take of the formation of the highway at the point where the accident occurred, the intersection of Government Street on which the two vehicles were travelling with the two lanes and neutral ground of Oakwood Drive leading north, considering that both cars were going east, was at the east lane of Oakwood Drive. To all intents and purposes so far as these 'two vehicles were concerned, they had not yet reached the east lane of Oakwood Drive when the accident occurred. The preponderance of the evidence is that both vehicles were travelling well on their right prior to approaching Oakwood Drive, Mrs. De Frances at 20 miles per hour, the ambulance driver at 40 miles per hour. There was no other traffic. The preponderance, of the evidence is that prior to the vehicles reaching the western side of the intersection no sign or signal was given by Mrs. De Frances of making or of her intention to make a left turn, regardless of her testimony that she had "stuck" her hand out and had so kept it out for a half block. We are of the opinion that Mrs. De Frances only "stuck" out her hand just as she started the execution of the left turn and then she was at about the western line of Oakwood Drive. In the meantime, the ambulance driver had pulled to his left and was about or was in the act of passing Mrs. De Frances. He had the right to assume that prior thereto Mrs. De Frances was not going to make a left-hand turn and he was at liberty to pass ahead of her. Therefore he is not guilty of the violation of the provisions of the Statute in that respect.
[3] With respect to the ambulance driver's failure to blow the horn, we are of the opinion, regardless of the strong denial of Mrs. De Frances that no horn signal was given, that the preponderance of the evidence is to the effect that the horn was blown prior to the ambulance driver leaving his lane of travel and particularly after he had completed his turn to the left and was travelling on his left, or north side of Government Street. We seriously doubt, in view of the situation as we see it, whether the sounding of the horn prior to the ambulance driver leaving his right-hand side was necessary and also whether it would have served to avoid the accident. As we have previously stated, Mrs. De Frances' truck was, up to the moment of her sudden attempted turn at an angle at about the opposite western line of Oakwood Drive, on its right-hand side of the road, leaving the ambulance driver necessary space on her left to pass ahead of her. We are of the opinion, like the ambulance driver and Miss Davis, that the horn was blowing just prior to the impact. An automobile driver's reaction on seeing an immediate emergency, is to blow the horn and pull to the side which will probably avert an accident. This is exactly what these two witnesses testified was done. It is noted that Mrs. De Frances claims not to have heard the horn nor seen the maneuver of the ambulance driver to the left, nor did she attempt to apply her brakes or do anything to avert the accident.
However, even admitting that the horn was not blown, when a car is attempting to *Page 621 
pass another vehicle on the road at night, the beam of light that is thrown by its burning headlights gives sufficient warning of the driver's intention that he is approaching and is trying to pass. The evidence in this case is that the headlights on the ambulance were burning and if, as the facts undeniably show, the two vehicles were practically abreast of each other, Mrs. De Frances was bound to have been warned of the ambulance driver's intention to pass ahead of her.
[4,5] Furthermore, the purpose of the law in requiring the giving of an audible warning by the overtaking vehicle, as we view it, is to favor its driver to the extent that his normal progress on the highway will not be unnecessarily impeded by the driver of the car preceding him in not leaving or giving him sufficient clearance in which to pass ahead. Mrs. De Frances states that she reduced her speed to 15 miles per hour at about the time she started to make her left turn. This might well he construed as an invitation to the ambulance driver to pass ahead of her. He had the right to presume that Mrs. De Frances was aware of his approach from the rear since the truck was equipped with side mirrors and necessarily a rear view mirror in the inside.
[6,7] It must be remembered that violation of a statute is not negligence per se. Every fact and circumstance must be taken into consideration. The violation of a statute must be a proximate cause of the accident. Under our appreciation of the facts in this case, considering the manner in which and the place of the accident, the ambulance driver's failure to blow his horn, if he so failed, and his attempted passing of the truck at an intersection did not contribute to the accident, and the sole and proximate cause of the accident was the negligence of Mrs. De Frances, for which the defendants must be held responsible.
We do not find any merits in the remaining charges of negligence as contended by the defendants. The ambulance driver was keeping proper lookout and his speed cannot be said to be excessive considering the time of day, the location of the accident, and the conditions then existing. These two vehicles were the only ones using Government Street at that time.
As to the quantum of damages, the amount claimed has been proven. In fact, it is not seriously contested by the defendants. The defendants only argue that the most of the damages to the ambulance were caused by the ambulance running into the fire plug. It was the accident which caused the ambulance to run into the fire plug.
For these reasons, the judgment of the lower court is annulled, avoided and reversed. It is now ordered, adjudged and decreed that there be judgment in favor of the plaintiff, Hollabaugh-Seale Funeral Home, Inc., and against the defendants, Frank De Frances, and the Standard Accident Insurance Company, in solido, in the full and just sum of $474.09, with legal interest from judicial demand, and all costs, out of which said sum the, amount of $424.09 is decreed to be for the benefit of the Paramount Fire Insurance Company.
Reversed and rendered.